CHURCH & CHURCH, INC v A-1 CARPENTRY

Docket No. 275823. Submitted July 10, 2008, at Detroit. Decided August 19, 2008. Approved for publication October 21, 2008, at 9:00 a.m.

Church & Church, Inc., brought an action in the Oakland Circuit Court against A-1 Carpentry, Fox Brothers Development Company, and others. Church had filed a lawsuit against a builder, Gemcraft Homes, Inc., following Gemcraft's failure to pay Church for building materials supplied for improvements to numerous properties. Church had recorded liens and mortgages on certain properties for which materials were furnished and sought foreclosure of its mortgages and liens, naming other lienholders, mortgagees, and those who otherwise had an interest in the properties as necessary defendants, including Fox Brothers and C & R Plumbing & Heating, Inc. This case was eventually consolidated in the trial court with several other cases in which contractors, subcontractors, and suppliers had also sued Gemcraft for, among other things, defaulting on mortgages and contracts or subcontracts for materials or services provided in connection with the construction of multiple properties. The consolidated cases contained numerous claims, cross-claims, and counterclaims, and various parties sought foreclosure on mortgages and liens on a multitude of properties. The court, Nanci J. Grant, J., eventually granted various motions for summary disposition, dismissed certain foreclosure suits and construction liens, and denied C & R's request to amend its complaints to add the Homeowner Construction Lien Recovery Fund as a party. Church appealed, by leave granted, the entry of summary disposition in favor of third-party defendants AKRS Properties Investment, LLC, and Ban Cassab, who obtained quitclaim deeds to some of the disputed properties following foreclosure by advertisement, as well as the dismissal of Church's claims seeking judicial foreclosure of its mortgages on five properties. Fox Brothers appealed, by leave granted, the entry of summary disposition in favor of Satish and Aarti Doshi with regard to a mortgage that Fox Brothers held on the Doshis' real property. C & R appealed, by leave granted, the grant of summary disposition in favor of the Doshis, discharging C & R's construction lien on the Doshis' property, and the denial of C & R's request to

amend its complaint to add a claim against the Homeowner Construction Lien Recovery Fund.

The Court of Appeals *held*:

1. Church released its construction liens on five properties owned by Gemcraft in exchange for mortgages on the properties in Church's favor before Gemcraft defaulted on the mortgages and Church sought judicial foreclosure against Gemcraft. Defendant Charter One Bank's mortgages on the same properties were recorded before Church's mortgages, and Charter One also sought judicial foreclosure against Gemcraft. However, before the suit was resolved, Charter One dismissed its foreclosure count and assigned and sold its interest to third-party defendant FGR Properties, LLC. FGR then foreclosed on the properties by advertisement, ultimately quitclaiming them to AKRS and Cassab. The trial court thereafter correctly dismissed Church's claim for foreclosure on the properties and granted summary disposition in favor of AKRS and Cassab. Because Charter One no longer was pursuing a claim for judicial foreclosure, the foreclosure by advertisement by FGR was not precluded under MCL 600.3204.

2. There was no violation of MCL 600.3105 and 600.3204, which prevent a mortgagee from simultaneously maintaining a lawsuit for judicial foreclosure and a foreclosure by advertisement because a double recovery could occur. Here there were two different mortgagees, Church and Charter One, pursuing two different mortgage debts on the same property and no problem with a double recovery of the same debt.

3. The trial court did make a determination that the Charter One mortgage had priority over Church's mortgage because it was recorded first and Church had knowledge of Charter One's mortgage.

4. The trial court properly held that under the facts of this case, the Doshis were bona fide purchasers of the parcel of property known as 7 Waltonshire. The only recorded mortgage between Fox Brothers and Gemcraft regarding the property was eventually satisfied by the sale of two other properties securing the mortgage. The Doshis purchased the property when Sterling Bank and Trust, which also held a mortgage on the property, foreclosed and sold it by advertisement while the Church suit was pending, and the Doshis received a covenant deed from Sterling Bank.

5. Because C & R did not name Sterling Bank as a party to its cross-complaint to foreclose on its construction lien on 7 Waltonshire even though it had knowledge that Sterling Bank had an interest in the property, the trial court did not err in

holding that C & R's claim of lien was extinguished under MCL 570.1117. For the same reason, it would have been futile to grant C & R leave to amend its complaint to add the Homeowner Construction Lien Recovery Fund as a party with regard to its claim.

Affirmed.

1. MORTGAGES — ELECTION OF REMEDIES.

A mortgagee may not pursue statutory foreclosure through advertisement with regard to a mortgage debt while at the same time maintaining a lawsuit for judicial foreclosure of the same mortgage debt; two mortgagees pursuing two different mortgages on the same property are not precluded from one pursuing judicial foreclosure and the other simultaneously pursuing statutory foreclosure (MCL 600.3105[2], 600.3204).

2. MORTGAGES — NOTICE OF DEFECTS IN TITLE — WORDS AND PHRASES — GOOD-FAITH PURCHASERS.

A conveyance of real estate that is not recorded as required by statute is void as against any subsequent purchaser in good faith and for a valuable consideration; a person takes in good faith if he or she takes without notice, actual or constructive, of a defect in the vendor's title; a person having knowledge of such facts as would lead an honest person, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate and who fails to make such inquiries is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed (MCL 565.29).

3. MECHANICS' LIENS — CONSTRUCTION LIENS — ACTIONS — ENFORCEMENT OF CONSTRUCTION LIENS.

The burden of proof is on a plaintiff to show compliance with statutory requirements necessary to establish a right of action to enforce a mechanic's lien; proceedings for the enforcement of a construction lien shall not be brought later than one year after the date on which the claim of lien was recorded; each person having an interest in the property shall be made a party to the action; until a lienholder files a cross-claim and notice of lis pendens in a pending suit, he or she has not begun the proceedings for the enforcement of the lien (MCL 570.1117).

4. MECHANICS' LIENS — CONSTRUCTION LIENS — HOMEOWNER CONSTRUCTION LIEN RECOVERY FUND — LIMITATION OF ACTIONS.

A subcontractor, supplier, or laborer who seeks enforcement of a construction lien on a residential structure through foreclosure must join the Homeowner Construction Lien Recovery Fund in the

foreclosure action within the period provided in MCL 570.1117(1) or be barred from recovery from the fund under the terms of the Construction Lien Act; proceedings for the enforcement of a construction lien and the foreclosure of any interest in the subject of the construction lien pursuant to 570.1117(1) shall not be brought later than one year after the date the claim of lien was recorded (MCL 570.1203[4]).

*Carthew Chapman, PLLC* (by *Paul Carthew* and *Lila Z. Nikollaj*), for Church & Church, Inc.

*Howard and Howard Attorneys, P.C.* (by *Matthew B. Woodworth*), for Charter One Bank.

*Plunkett Cooney* (by *Ernest R. Bazzana* and *Kurt Riedel*) for Satish and Aarti Doshi.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Kelley T. McLean*, Assistant Attorney General, for the Homeowner Construction Lien Recovery Fund.

*Burchfield, Park & Pollesch, P.C.* (by *Shari L. Pollesch*), for Fox Brothers Development Company.

*Urbani & Marshall, P.C.* (by *Anthony Urbani, II*), for C & R Plumbing & Heating, Inc.

*Bernardi, Ronayne & Glusac, a Professional Corporation* (by *Elise N. Reed*), for AKRS Properties Investment, LLC, Ban Cassab, and FGR Properties, LLC.

Before: METER, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM. Plaintiff, Church & Church, Inc. (Church), appeals by leave granted the trial court's entry of summary disposition in third-party defendants AKRS Properties Investment, LLC, and Ban Cassab's favor and the dismissal of plaintiff's claims seeking

judicial foreclosure of its mortgages on five real proper-
ties. Defendant Fox Brothers Development Company
appeals by leave granted the trial court's entry of
summary disposition in favor of cross-defendants Satish
and Aarti Doshi (the Doshis) concerning a mortgage Fox
Brothers held on the Doshis' real property. Defendant C
& R Plumbing & Heating, Inc. (C & R), appeals, also by
leave granted, the trial court's order of summary dis-
position in the Doshis' favor discharging C & R's
construction lien on the Doshis' property and its denial
of C & R's request to amend its complaint to add a claim
against cross-appellee, the Homeowner Construction
Lien Recovery Fund. We affirm.

This case finds its origin in a lawsuit filed by Church
against a builder, Gemcraft Homes, Inc., for Gemcraft's
failure to pay Church for building materials it had sup-
plied to Gemcraft for improvements to numerous proper-
ties in southeast Michigan. Church recorded liens and
mortgages on certain properties for which materials were
furnished. Seeking foreclosure of its mortgages and liens
in the lawsuit, Church named the other lienholders,
mortgagees, and those who otherwise had an interest in
the properties as necessary defendants in the lawsuit,
including Fox Brothers and C & R.

This case was eventually consolidated in the trial
court with several other cases in which contractors,
subcontractors, and suppliers had sued Gemcraft for,
among other things, defaulting on mortgages and de-
faulting on contracts or subcontracts for materials or
services provided in connection with the construction of
multiple properties. These consolidated cases contain
numerous claims, cross-claims, and counterclaims, and
various parties sought foreclosure on mortgages and
liens on a multitude of properties in the proceedings.
The present appeals concern themselves with several of
these foreclosure claims.

CHURCH'S APPEAL

Relevant to this appeal, Church held construction liens on five properties owned by Gemcraft. Before initiation of this lawsuit, however, Church agreed to release its construction liens in exchange for the execution of mortgages on the properties in Church's favor. Gemcraft apparently defaulted on the mortgages, and the five properties were among those for which Church sought judicial foreclosure in its lawsuit against Gemcraft.

Defendant Charter One Bank (Charter One) also held mortgages on these five properties and had recorded its mortgages before Church's mortgages were recorded. Charter One was named as a defendant in Church's lawsuit and filed a cross-claim against Gemcraft for, among other things, breach of contract and additionally sought judicial foreclosure on the five properties.

In April 2004, before the Church lawsuit was resolved, Charter One dismissed the foreclosure count of its cross-claim against Gemcraft. Approximately one month later, Charter One assigned its interest in and sold its loans on the subject properties to third-party defendant FGR Properties, LLC (FGR). FGR thereafter foreclosed on the properties by advertisement, and the properties were ultimately quitclaimed to AKRS Properties Investment, LLC, and its owner/president Ban Cassab.

In 2006, Church filed a motion for partial summary disposition, asserting that it was entitled to judicial foreclosure of its mortgages on the five properties, that the sale of the properties by FGR did not extinguish plaintiff's interest in the properties, and that the foreclosure by advertisement should be declared void. The trial court ultimately granted AKRS and Cassab's coun-

termotion for summary disposition, dismissing Church's claims with respect to the five properties.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Arthur Land Co, LLC v Otsego Co*, 249 Mich App 650, 661; 645 NW2d 50 (2002). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). When reviewing a motion under this subrule, the court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.*

On appeal, Church contends that MCL 600.3204 provides for foreclosure by advertisement (otherwise known as statutory foreclosure) only if that party has not already sued on the underlying debt. According to Church, Charter One's cross-claim against Gemcraft for breach of contract is an action to recover the debt secured by the mortgages and Charter One's dismissal of only the judicial foreclosure claim precluded FGR, pursuant to MCL 600.3204, from foreclosing on the properties by advertisement. We disagree.

MCL 600.3204(1) provides as follows:

> A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued;

or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

There is no question that Charter One filed a cross-complaint against Gemcraft for breach of contract because of Gemcraft's default on mortgages and loan documents concerning the properties at issue and for foreclosure of the mortgages held on the properties. However, Charter One dismissed its foreclosure claim and thereafter assigned its interest in and sold its loans on the subject properties to FGR. Despite Church's contrary contention, Charter One's actions in divesting itself of any and all rights, title, and interest in the subject properties acted as an implied dismissal of all its claims concerning the properties.

In *Saph v Auditor General*, 317 Mich 191, 202; 26 NW2d 882 (1947), an individual, who brought an action to cancel taxes on real property he held, deeded the property to another during the pendency of the lawsuit. Noting that the plaintiff had divested himself of all title and interest in the property involved in the lawsuit, our Supreme Court declared, "[a] court of equity will not permit a party who has voluntarily divested himself of any claim to continue litigating." Our Supreme Court has previously held that with regard to a party's assignment of his or her interest in a property that was the subject of a lawsuit, while not operating strictly as an abatement of the lawsuit, "its effect was much the same, as it left no party complainant before the court competent to prosecute it." *Webster v Hitchcock*, 11

Mich 56, 58 (1862). The Court faced a similar situation in *Brewer v Dodge*, 28 Mich 359, 360-361 (1873):

> It appears from complainant's own showing that in June 1870, he conveyed the premises in dispute to one Charles E. Ritson. Ritson never made himself a party to the suit. By that conveyance complainant ceased to have any further interest in the controversy. If any one was injuriously affected by any subsequent proceedings, it was Ritson, and not complainant. It was no concern of his after he had sold out all his interest. A court of equity must have the real parties before it, and will not permit a party who has voluntarily divested himself of any claim on his own behalf, to continue litigating. As soon as a complainant assigns his rights, the suit, as to him, ceases, and becomes as defective for want of a complainant as if it had abated by his death.

Here, Charter One dismissed its foreclosure claim. The breach of contract action was based on Gemcraft's failure to pay the mortgages—the same basis as the foreclosure claim. When Charter One assigned the mortgages and all of its rights, title, and interest as mortgagee to FGR, it no longer had any interest whatsoever in the mortgages. The breach of contract claim being based on the mortgage documents, and Charter One no longer having an interest in the mortgages, Charter One had no claim to continue pursuing against Gemcraft.

That a party has divested itself of interest in the real property that is the subject of the lawsuit does not, however, require dismissal of the lawsuit. As indicated by Church, Charter One could have continued with the breach of contract claim against Gemcraft—the operative word here being "could." MCR 2.202(B) governs the substitution of parties when there has been a transfer or change of interest and provides, in relevant part:

> If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity.

Notably, the use of the term "may" instead of "shall" in this court rule indicates discretionary rather than mandatory action. *Murphy v Ameritech,* 221 Mich App 591, 600; 561 NW2d 875 (1997). Thus, Charter One, as the original party, *could* have continued in the breach of contract action. There is no allegation, however, that any action on the breach of contract claim continued after Charter One assigned the mortgages to FGR, and there is no assertion that anyone moved to have FGR added or substituted as a party. Charter One's claim for breach of contract could thus be deemed discontinued, and FGR was free to pursue foreclosure by advertisement pursuant to MCL 600.3204.

Church next asserts that the foreclosure by advertisement should have been declared void, because Michigan law does not allow for foreclosure by advertisement of a property when a judicial foreclosure on the same property is pending. We disagree.

We would first note that Church stipulated the dismissal of all its claims against FGR. FGR having been the party who foreclosed on the properties through advertisement, it is questionable whether Church's claims of an invalid foreclosure by advertisement have any merit. Nevertheless, we will address the argument.

The right to foreclosure by advertisement is statutory. *Calaveras Timber Co v Michigan Trust Co,* 278 Mich 445, 450; 270 NW 743 (1936). Such foreclosures are a matter of contract, authorized by the mortgagor,

and ought not be hampered by an unreasonably strict construction of the law. *Cramer v Metro S&L Ass'n*, 401 Mich 252, 261; 258 NW2d 20 (1977). Harsh results may and often do occur because of mortgage foreclosure sales, "but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made." *Calaveras Timber Co, supra*, at 454.

Church contends that it was the intent of the Michigan Legislature, in enacting MCL 600.3201 *et seq.*, to promote the election of remedies involving foreclosures of the same property. Church cites no law, however, to support this assertion. Moreover, that is not an entirely correct statement regarding the purpose of the statute:

> The [precursor] statute [to MCL 600.3204] forbids the beginning of a statutory foreclosure if any "suit or proceeding shall have been instituted at law, to recover the debt then remaining secured" unless "the same has been discontinued, or that an execution upon the judgment rendered therein has been returned unsatisfied in whole or in part." [1871 CL] 6913. This statute clearly refers to suits on the debt, and not to foreclosure proceedings on the mortgage, and its object is to prevent proceedings, at the same time to prosecute the personal liability of the mortgagor and pursue the land. It is to prevent a simultaneous double vexation, which was allowed in England, but not generally here. [*Lee v Clary*, 38 Mich 223, 227 (1878).]

According to *United States v Leslie*, 421 F2d 763, 766 (CA 6, 1970), "[t]he language of Lee v. Clary is unmistakably clear that it is the purpose of the statute to force an election of remedies which if not made would create the possibility that the mortgagee could foreclose the mortgage and at the same time hold the maker of the note personally liable for the debt. *Accord*, Larzelere v. Starkweather, 38 Mich. 96, 105 (1878)."

More correctly stated, then, the intention of the Legislature with respect to the foreclosure statutes was to force an election of remedies by a mortgagee concerning a single debt: i.e., the same mortgagee cannot simultaneously maintain a lawsuit for judicial foreclosure and a foreclosure by advertisement, because it would allow for double recovery on the same debt. The statute thus serves to protect the mortgagor—not another mortgagee, as argued by Church.

Here, there is no election of remedy issue because Charter One and Church are two different mortgagees pursuing two different mortgage debts. There is no concern, then, that the mortgagor would be forced to pay a double recovery on the same debt. Moreover, we are directed to no authority that limits one mortgagee's remedy election to that chosen by a separate mortgagee.

That the Legislature intended to limit foreclosure proceedings in the manner suggested by Church is also not borne out by the statutory language in the foreclosure statutes. MCL 600.3204 provides that a party may foreclose if a default on *the* mortgage has occurred and an action at law has not been instituted to recover *the* debt secured by *the* mortgage or the action or proceeding has been discontinued. Use of the word "the" rather than "a" suggests that the Legislature did not concern itself with multiple mortgagees pursuing different debts secured by the same property.

MCL 600.3105(2), which governs judicial foreclosures, similarly provides:

> After a complaint has been filed to foreclose a mortgage on real estate or land contract, while it is pending, and after a judgment has been rendered upon it, no separate proceeding shall be had for the recovery of the debt secured by the mortgage, or any part of it, unless authorized by the court.

By its terms, MCL 600.3105 only prohibits a separate proceeding for recovery of a debt secured by a mortgage if a proceeding has already been initiated to recover the same debt secured by the same mortgage. Again, use of the word "the" before "debt" and "mortgage" limits a party holding a single debt secured by a single mortgage to the election of either judicial or statutory foreclosure by advertisement to prevent double recovery on the same debt.

Additionally, Church was not left without recourse because of FGR's election of foreclosure by advertisement. Church has not contended that it was unaware of the foreclosures by advertisement. In fact, an FGR representative submitted an affidavit indicating that during its negotiations with Charter One to obtain the properties at issue, he was in regular contact with Church's counsel and advised counsel of FGR's intent to purchase the properties. The foreclosure of the properties was thereafter held by advertisement. Church, then, could have sought to enjoin the sales in court, or could also, as it did here, have sought to have the foreclosures declared void. It could also have redeemed the properties after the foreclosures within the redemption period, because a junior mortgagee retains the right to redeem from the mortgage sale by paying the amount due on the senior mortgage with interest. See, e.g., *Titus v Cavalier*, 276 Mich 117, 120; 267 NW 799 (1936).

Church also argues that priority of its and Charter One's mortgages on the properties was an unresolved issue in the judicial action, so that the foreclosure by advertisement was inappropriate. Church asserts that it is not asking this Court to determine priorities, but that the proper forum for such a determination is in the lower court. The trial court, however, *did* address and

resolve the issue of priority in its October 11, 2006, opinion and order. The trial court noted:

> . . . Plaintiff does not dispute that the interest it seeks to enforce in this action was acquired after the Bank acquired and recorded its mortgage. Rather, Plaintiff argues that its claim should be treated as if it predated the Bank's claim under the doctrine of equitable subrogation. This Court disagrees. Plaintiff had an opportunity to ensure that its claim was superior to the bank's, but chose to subordinate its claim by converting it to a mortgage and recording if after the bank recorded its mortgage. In this context, equitable subrogation is not appropriate.

According to the trial court, then, there was no cognizable dispute regarding priority. Church was well aware that it recorded its mortgages on the properties after Charter One recorded its mortgages and thus possessed mortgages junior to those of Charter One. The holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers. *Richards v Tibaldi*, 272 Mich App 522; 726 NW2d 770 (2006). Church's argument (here and in the trial court) that its admittedly discharged construction liens should somehow be construed as having priority is without support. There being no priority dispute with regard to the mortgages held by Church and Charter One and there being no dispute regarding the amount of the mortgages, we affirm.

### FOX BROTHERS' APPEAL

Fox Brothers' appeal concerns a single parcel of property, known as 7 Waltonshire, that was originally owned by Gemcraft and for which Gemcraft served as general contractor. According to Fox Brothers, Gemcraft granted it a mortgage on this property in the amount of $47,000 to secure its credit account with Fox

Brothers (which provided windows, siding, and roofing on several of Gemcraft's projects). The mortgage was recorded in 2001 and provides that the mortgage is intended to secure the payment under the mortgage note of the sum of $47,000. A promissory note executed on the same date as the mortgage provides that "[t]his Mortgage Note is secured by a mortgage granting security interest in three (3) parcels of land" and describes the three parcels, one of which is 7 Waltonshire.

In January 2003, Gemcraft and Fox Brothers entered into a security agreement whereby Fox Brothers agreed to release a secured interest on one of the three properties referenced in the promissory note and Gemcraft agreed, in turn, to amend the secured interest Fox Brothers had on the other two properties referenced in the promissory note so that Fox Brothers was secured against *each* property separately in the amount of $47,000, with such amendment retroactive to the initial date of the promissory note. In March 2003, a first amended mortgage note and mortgage reflecting this agreement were executed. Neither of the amended documents was recorded.

Sterling Bank and Trust also held a mortgage on 7 Waltonshire and foreclosed on the same by advertisement while the Church lawsuit was pending. Sterling Bank then sold 7 Waltonshire to the Doshis by covenant deed. The Doshis then became involved in the lawsuit, and summary disposition motions were eventually brought by parties with claims against 7 Waltonshire, including a motion by Fox Brothers seeking a ruling that it may foreclose on the property. The Doshis, however, claimed that the terms of the 2001 agreement between Gemcraft and Fox Brothers were satisfied and that any claim of an interest in 7 Waltonshire by Fox

Brothers was thus discharged. The Doshis further claimed that they were bona fide purchasers with respect to the 2003 unrecorded amended mortgage and note between Gemcraft and Fox Brothers. The trial court granted summary disposition in favor of the Doshis, finding that they were bona fide purchasers for value of 7 Waltonshire.

Fox Brothers now contends that because the Doshis purchased 7 Waltonshire from Sterling Bank well after the Fox Brothers recorded their original mortgage on the property, the Doshis, were on notice of an interest held by Fox Brothers in the property and could not be bona fide purchasers for value with regard to Fox Brothers. We disagree.

Michigan's race-notice statute provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof. [MCL 565.29.]

This section applies to mortgages. *Michigan Fire & Marine Ins Co v Hamilton,* 284 Mich 417, 419; 279 NW 884 (1938).

A person takes in "good faith" if he or she takes without notice of a defect in the vendor's title. *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992). "Notice" in the context of real estate law can be actual or constructive and has been defined by our Supreme Court as follows:

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [*Kastle v Clemons,* 330 Mich 28, 31; 46 NW2d 450 (1951).]

There is no question that Fox Brothers and Gemcraft were free to amend or extend their agreement concerning the debt owed Fox Brothers and the mortgage securing the debt. "It is well settled by the weight of authority that the parties to a mortgage originally intended to secure a particular debt may extend the security to the payment of a different debt or future advances as far as their respective rights are concerned." *Riess v Old Kent Bank*, 253 Mich 557, 562-563; 235 NW 252 (1931). The note, then, for additional debt could certainly be enforceable against Gemcraft. The issue presented here, however, is the effect on a third party of an unrecorded change to the debt.

The original mortgage and note indisputably provided for the payment of a single $47,000 debt, which was secured by interests in three parcels of land, one of which was 7 Waltonshire. The mortgage being duly recorded in 2001, the Doshis purchased 7 Waltonshire subject to the 2001 mortgage. However, because the 2003 mortgage and underlying note that expanded the debt were not recorded, the Doshis had no actual notice of such change. Fox Brothers argues that because the original mortgage was recorded and this litigation was pending, the Doshis should have made inquiry into the debt underlying the mortgage and litigation to determine whether the debt remained the same. However, Fox Brothers provides no authority suggesting that the Doshis had a legal duty to undertake such an inquiry. Because the Doshis received a covenant deed from

Sterling Bank and the amended mortgage was not recorded as required by statute, and because the fact that a lawsuit was pending, absent any suggestion that the Doshis knew or should have suspected that the pending litigation involved anything other than what was contained in the public record, would not serve to give the Doshis constructive notice, we affirm the trial court's finding that the Doshis were bona fide purchasers for value of 7 Waltonshire with respect to the amended mortgage. The amended mortgage is thus void as against the Doshis.

In addition, because the only mortgage enforceable against the Doshis provided for a single $47,000 debt secured by 7 Waltonshire and two other properties and it is undisputed that Fox collected more than $47,000 from the sale of the other two properties, the first mortgage could be construed as paid in full and thus discharged.

### C & R'S APPEAL

C & R's claim on cross-appeal also relates solely to 7 Waltonshire. C & R was hired by Gemcraft to install rough plumbing and plumbing fixtures in a number of Gemcraft's projects, including 7 Waltonshire. C & R received partial payment from Gemcraft for its services on 7 Waltonshire and recorded a lien against the property on August 20, 2002, for the outstanding balance of $7847.50. C & R was named in the Church lawsuit as a defendant and as an interest holder in 7 Waltonshire and filed a cross-claim for foreclosure on its construction lien.

The Doshis eventually moved for summary disposition, seeking to discharge all construction liens on 7 Waltonshire, asserting, with respect to C & R's lien, that it did not timely file its foreclosure action, thereby

barring enforcement of its lien pursuant to MCL 570.1117. C & R offered no response to this particular argument, but moved to amend its complaint to add a claim against the Homeowner Construction Lien Recovery Fund. See MCL 570.1201. The trial court granted summary disposition in the Doshis' favor and discharged C & R's lien, noting that because C & R did not address the statute of limitations argument, summary disposition based on the statute of limitations was appropriate. The trial court also denied C & R's request to amend its complaint. We affirm.

MCL 570.1117 states, in relevant part:

> (1) Proceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded.

> \* \* \*

> (4) Each person who, at the time of filing the action, has an interest in the real property involved in the action which would be divested or otherwise impaired by the foreclosure of the lien, shall be made a party to the action.

Until a lienholder files a cross-claim and notice of lis pendens in a pending suit, he has not begun the proceedings required by statute for the enforcement of his liens. *L J Mueller Furnace Co v Wayne Circuit Judge*, 226 Mich 672; 198 NW 248 (1924). The burden of proof is on a plaintiff to show compliance with statutory requirements necessary to establish a right of action to enforce a mechanic's lien. *Skyhook Lift-Slab Corp v Huron Towers, Inc*, 369 Mich 36; 118 NW2d 961 (1963).

Here, it is undisputed that C & R recorded an amended construction lien with respect to 7 Walton-

shire on August 20, 2002. It is also undisputed that on February 28, 2003, Clinton Valley Title Company recorded an affidavit of lost document, indicating that a mortgage loan had previously been closed by Gemcraft in favor of Sterling Bank and Trust on 7 Waltonshire. It is further undisputed that C & R filed its cross-complaint seeking foreclosure of its construction lien on 7 Waltonshire on June 6, 2003, and did not name Sterling Bank as a party in its complaint. The above being true, the court action to foreclose on the lien was not effective with respect to the real interests of unnamed parties that should have been named (Sterling Bank). This results in extinguishing C & R's claim of lien because any future foreclosure action would be beyond the one-year limitations period under the Construction Lien Act. MCL 570.1117. The trial court's ruling with respect to C & R's lien on 7 Waltonshire is thus affirmed.

With respect to C & R's argument that it should have been granted leave to amend its complaint, we note that this Court will reverse a trial court's decision on a motion to amend a complaint only where the trial court abused its discretion. *Dampier v Wayne Co*, 233 Mich App 714, 721; 592 NW2d 809 (1999). Leave to amend a complaint should be freely given when justice so requires. MCR 2.118(A)(2). Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. *Phinney v Perlmutter*, 222 Mich App 513, 523; 564 NW2d 532 (1997).

The Homeowner Construction Lien Recovery Fund (MCL 570.1201) was created to address the situation

where potential lien claimants have done everything required of them under the Construction Lien Act, MCL 570.1101 *et seq.*, but are precluded from recovering because of, for example, a homeowner's prior payment to a contractor. *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 394; 594 NW2d 81 (1999). In such situations, they may recover the amount of their lien from the Homeowner Construction Lien Recovery Fund. *Id.* To that end, MCL 570.1203(4) provides:

> A subcontractor, supplier, or laborer who seeks enforcement of a construction lien on a residential structure through foreclosure shall join the fund as a defendant in the foreclosure action within the period provided in section 117(1). The subcontractor, supplier, or laborer shall serve a summons and complaint on the office of the fund administrator within the department by certified or registered mail or by leaving a copy at the office. The failure to serve a summons and complaint under this subsection bars recovery from the fund. After a defendant is served with a summons and complaint in an action to foreclose a construction lien, the department may intervene in the action as a party defendant with respect to other construction liens.

Section 117(1) provides that "[p]roceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded." MCL 570.1117(1).

While C & R filed its cross-complaint seeking foreclosure of its construction lien on 7 Waltonshire within one year of when it recorded the lien, C & R does not dispute that it failed to name the Homeowner Construction Lien Recovery Fund as a party in its initial cross-complaint. Because MCL 570.1117 serves as a statute of limitations and unequivocally requires that the fund be named as a party within that limitations period, and the

limitations period for bringing a claim against the fund had passed, it would be futile for the trial court to have granted C & R's motion to add the fund as a party.

Affirmed.