*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JD NORMAN INDUSTRIES, INC.,

        Plaintiff/Counterdefendant-Appellant,

v

AMERICAN AXLE & MANUFACTURING INC.,

        Defendant/Counterplaintiff-Appellee,

and

METALDYNE PERFORMANCE GROUP INC.,
METALDYNE LLC, and METALDYNE
SINTERFORGED PRODUCTS LLC,

        Defendants-Appellees.

UNPUBLISHED
April 20, 2023

No. 360041
Wayne Circuit Court
LC No. 21-000523-CB

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Plaintiff/counterdefendant JD Norman Industries, Inc. ("plaintiff" or "JDN") appeals by right the trial court's stipulated order dismissing defendant/counterplaintiff American Axle & Manufacturing, Inc.'s ("American Axle" or "AAM") counterclaim. In this dispute between part manufacturers for General Motors ("GM") vehicles, plaintiff argues the trial court erred when it granted defendants' motion for summary disposition and abused its discretion when it denied plaintiff's request for leave to amend. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Prior to February 2021, plaintiff was "a leading diversified manufacturer of highly engineered metal components and systems with operations in the United States, Mexico, and Canada." As relevant here, plaintiff supplied manufactured connecting rods to Federal-Mogul Powertrain LLC, which in turn used those rods for rod and piston assemblies in two GM engine programs: (1) the Duramax V8 engines, and (2) the Gen V+ and 6.2L V8 engines. According to

-1-

plaintiff, it was the sole supplier of the rods for the Gen V+ and 6.2L V8 engines and supplied the majority of the rods for the Duramax engines.

Defendant American Axle is a metal forming automotive supplier and supplied plaintiff with component parts for the rods. In addition to supplying component parts for the rod assemblies, American Axle was also capable of competing directly with plaintiff by supplying the assembled rods directly to Federal-Mogul. Defendants Metaldyne LLC, Metaldyne Performance Group, Inc., and Metaldyne SinterForged Products LLC are subsidiaries of American Axle, which acquired the subsidiaries in 2017.

On October 7, 2019, as a result of plaintiff's failure to pay the past due amounts for its orders, defendants terminated their agreement with plaintiff. The parties subsequently entered into a "Standstill Agreement" under which defendants would refrain from pursuing the past due amounts provided plaintiff complied with certain payment conditions. The Standstill Agreement also allowed plaintiff to continue to obtain components for the rods on a spot-purchase basis. Subsequently, on May 12, 2020, the parties entered into a "Supply Agreement," which is the subject of this dispute. The original term of the Supply Agreement was to last through October 31, 2020. Although the term of the Supply Agreement was extended twice, defendants notified plaintiff that it would not continue its business relationship with plaintiff after the January 31, 2021 expiration date.

Before the term of the Supply Agreement expired, plaintiff filed suit in the trial court, seeking damages for breach of contract and relief under theories of specific performance and declaratory and injunctive relief. Plaintiff also moved for a preliminary injunction, in which plaintiff asked the court to order the parties to maintain the status quo under the Supply Agreement, which the trial court denied.

Plaintiff would amend its complaint twice, eventually asserting three counts of breach of contract,[1] one count of breach of the covenant of good faith and fair dealing, and two counts of tortious interference. In response, defendants moved for summary disposition, arguing, as relevant here, that the Supply Agreement contained a condition precedent to suit that plaintiff failed to satisfy. Defendants also argued that plaintiff's tortious interference claims failed as a matter of law because plaintiff did not allege a breach of a duty separate from those duties found in the Supply Agreement. The trial court agreed, granting summary disposition in defendants' favor under MCR 2.116(C)(8). The trial court also denied plaintiff's motion to amend its complaint, concluding any such amendment would be futile.

This appeal followed.

## II. SUMMARY DISPOSITION

---

[1] In addition to alleging breach of the Supply Agreement, plaintiff alleged that defendants breached the terms of the purchase orders issued by plaintiff and breached the terms of directed buy letters issued by GM. These additional theories of breach are not relevant to the issues raised on appeal.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 6; 972 NW2d 860 (2021). "A motion under MCR 2.116(C)(8) tests the [legal] sufficiency of the complaint based on the pleadings alone." *Bauserman v Unemployment Ins Agency*, 330 Mich App 545, 559; 950 NW2d 446 (2019), aff'd 509 Mich 673 (2022). "In reviewing a motion brought under MCR 2.116(C)(8), all well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id*. (quotation marks and citation omitted). "Judgment is properly granted under this subrule when the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Plaintiff contends that the trial court erred because the Supply Agreement did not require plaintiff to give defendants five days' notice and an opportunity to cure before bringing suit. Accordingly, plaintiff argues the trial court's conclusion that plaintiff failed to satisfy the condition precedent in the contract was erroneous and did not bar its breach of contract claim. We disagree.

"[T]he main goal in the interpretation of contracts is to honor the intent of the parties." *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003). Words in a contract are given "their plain and ordinary meanings." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). "An unambiguous contract must be enforced according to its terms." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). "Plain and unambiguous contract language cannot be rewritten by the Court under the guise of interpretation, as the parties must live by the words of their agreement." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007) (quotation marks and citation omitted).

A "condition precedent" is "a fact or event that the parties intend must take place before there is a right to performance." *Id*. (quotation marks and citation omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Id*. The party seeking enforcement of the condition precedent, however, "cannot avoid liability on the contract for the failure of a condition precedent where [that party] caused the failure of the condition." *Id*.

The relevant provision from the Supply Agreement is from section 7(a), which states:

> (a) During the Term, and as to JDN's bona fide accounts payable arising from shipments of Parts made prior to the expiration or termination of the Term owed to AAM (the "AAM Accounts"), JDN agrees to not setoff, recoup, or deduct against the AAM Accounts: provided, however, JDN may setoff, recoup, or deduct against the AAM Accounts for improper invoicing, mispricing, duplicate payments or billing errors (subject to written notice and reasonable documentation) and any and all documented defective or nonconforming Parts and quality problems, unordered or unreleased Parts that JDN returns to AAM, short shipments, misshipments, premium freight charges (not caused by JDN), and reasonable out-of-pocket professional fees and costs incurred by JDN relating to the foregoing (collectively, the "Allowed Parts Setoffs"): provided, that JDN shall provide AAM

a five (5) business-day notice (the "Setoff Notice") prior to implementing any Allowed Parts Setoffs to provide AAM the opportunity to correct the matter.

There is no dispute that plaintiff did not provide defendants with the required five-day notice under this provision of the Supply Agreement. There is also no dispute that section 7(a) contains a condition precedent for *something*; however, the parties do not agree on what that *something* is. According to plaintiff, this provision did not prevent it from bringing suit for breach of contract for failure to supply the components because the provision related to the ability of plaintiff to recoup monies for missing or defective parts, not its ability to sue for breach of contract. Plaintiff is correct that section 7(a) of the Supply Agreement does not specifically reference bringing suit; however, it defines, in relevant part, the "Allowed Parts Setoffs" as "all documented defective or nonconforming Parts and quality problems, unordered or unreleased Parts that JDN returns to AAM, short shipments, [or] misshipments . . . ." In such a circumstance, plaintiff would be entitled to "setoff, recoup, or deduct" those amounts.

While the parties focus on the term "setoff," as demonstrated above, the Supply Agreement refers to plaintiff's ability to "setoff, recoup, or deduct" in the event of a defective or short delivery. In plaintiff's complaint, it alleged that defendants "breached the Supply Agreement by delivering non-conforming Components." In light of that alleged breach, plaintiff sought to recoup its damages. Accordingly, we have little trouble concluding that under the Supply Agreement, plaintiff's act of bringing suit for damages as a result of defendants' alleged failure to supply conforming components was an attempt to "recoup" those amounts.

Plaintiff also contends the trial court erred because it concluded that plaintiff failed to plead its breach-of-contract claim with particularity. For its part, the trial court stated:

JDN does not allege any specific instances in which it provided notice of any defects, either in quantity or quality. JDN merely makes general and unspecific factual allegations that American Axle materially breached the Supply Agreement by failing to deliver JDN's quantity requirements, by failing to timely deliver enough Components, and by delivering non-conforming Components. . . . [Therefore,] JDN has failed to show a factual predicate for any of its bare allegations.

It is clear to us that the when the trial court concluded that plaintiff failed to plead with particularity, it was referring to the fact that plaintiff did not allege any facts to show it satisfied the condition precedent in the contract. To the extent the court meant to refer to other facts not pleaded sufficiently, such a conclusion is not relevant to the analysis because plaintiff still did not allege any facts showing it satisfied the condition precedent. In other words, it would not matter how specifically plaintiff pleaded its other allegations if there was no allegation that plaintiff provided defendants with the notice required under the Supply Agreement.

Plaintiff also contends the trial court erred when it granted summary disposition in defendants' favor because its business tort claims alleged a breach of a duty that was separate from the duty imposed under the Supply Agreement. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises v RPF Oil Co*, 299 Mich App 275,

280; 829 NW2d 345 (2013) (quotation marks and citation omitted). Likewise, to show tortious interference with a business expectancy, the plaintiff must prove "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 323; 788 NW2d 679 (2010).

"One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004) (quotation marks and citation omitted). However, "a tort action will not lie when based solely on the nonperformance of a contractual duty." *Fultz v Union-Commerce Assocs*, 470 Mich 460, 466; 683 NW2d 587 (2004).

Thus, the question becomes whether plaintiff's tort claims are premised on the "nonperformance of a contractual duty." See *id.* In plaintiff's complaint, it alleged plaintiff "took the actions set forth above" in order to interfere with its contracts and business relationships. Those actions related to defendants' alleged failure to supply sufficient quantity and quality of components under the Supply Agreement:

> 30. During the term of the Supply Agreement, AAM repeatedly (and JDN believes intentionally and in concert with GM) materially breached the Supply Agreement by failing to deliver JDN's quantity requirements for the Components and by failing to timely deliver enough Components.

> 31. During the term of the Supply Agreement, AAM also repeatedly breached the Supply Agreement by delivering non-conforming Components.

These are the only allegations of the breach of the Supply Agreement in plaintiff's complaint. Accordingly, as pleaded in plaintiff's complaint, the alleged failure of defendants to supply sufficient quantity and quality of components—a duty it alleged was imposed by the Supply Agreement—was the intentional act and breach of duty that formed the basis of the tort claims. As explained by the Michigan Supreme Court:

> [I]f defendant fails or refuses to perform a promise, the action is in contract. If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. In such cases, however, no tort liability arises for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made. [*Fultz*, 470 Mich at 469-470.]

Because the duty to supply plaintiff with sufficient quantity and quality of components was a contractual duty, plaintiff cannot maintain a tort cause of action on the basis of that duty. See *id.* at 466.

In sum, the trial court did not err when it granted summary disposition in defendants' favor because plaintiff did not satisfy the condition precedent in the Supply Agreement and did not allege

a breach of a duty separate from that imposed under the Supply Agreement. Accordingly, we affirm the order of the trial court granting summary disposition in defendants' favor.

## III. LEAVE TO AMEND

### A. STANDARD OF REVIEW

This Court reviews the trial court's decision to deny a motion to amend the pleadings for abuse of discretion. *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 272; 951 NW2d 731 (2019). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. ANALYSIS

Plaintiff contends the trial court abused its discretion when it denied plaintiff's motion for leave to amend because any such amendment would not have been futile. According to plaintiff, it obtained internal communications from defendants during discovery demonstrating that defendants intentionally breached the Supply Agreement and had no intention to extend the term. However, because the additional allegations do not rectify the issues with plaintiff's complaint identified above, we agree with the trial court that any such amendment would have been futile.

"Leave to amend a complaint should be freely given when justice so requires." *Church & Church, Inc v A-1 Carpentry*, 281 Mich App 330, 349; 766 NW2d 30 (2008); see also MCR 2.118(A)(2). "Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *A-1 Carpentry*, 281 Mich App at 349. "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Mich Head & Spine*, 331 Mich App at 277 (quotation marks and citation omitted).

In plaintiff's proposed third amended complaint, as it related to the breach of the Supply Agreement, plaintiff alleged that defendants intentionally began to "throttle" plaintiff, meaning it intentionally did not supply plaintiff with sufficient quantity of components to allow plaintiff to meet its obligations. Plaintiff also alleged in its proposed amended complaint that defendants were aware they were sending defective parts to plaintiff. With respect to plaintiff's business tort claims, plaintiff's proposed amended complaint alleged that defendants intentionally breached the Supply Agreement for the purpose of eliminating plaintiff from the supply chain.

None of these allegations, however, cure the deficiencies identified in plaintiff's second amended complaint. Beginning with the Supply Agreement, the alleged fact that defendants knew they were breaching the Supply Agreement by deciding to "throttle" plaintiff does not rectify the fundamental issue that plaintiff failed to satisfy the condition precedent in the Supply Agreement that it give defendants five days' notice and an opportunity to cure. As explained above, before plaintiff could "recoup" any amount related to insufficient or defective components, it had to satisfy that condition precedent. None of the additional allegations accomplish this.

The same is true for plaintiff's additional allegations concerning the business tort claims. For these claims, plaintiff relies on internal communications purporting to discuss defendants'

plans to "throttle" plaintiff—which plaintiff interpreted and alleged to mean defendants would intentionally cut plaintiff out of the supply chain. Plaintiff also points to defendants' internal e-mails in which certain employees feel uncomfortable about treating plaintiff in this manner. However, plaintiff's additional allegations do not cure the problems with the second amended complaint—i.e., there are no allegations that defendants breached a duty separate from the duty imposed by the Supply Agreement. The Michigan Supreme Court has explained:

> [W]hen a defendant completely fails to perform his contractual obligations, "[w]hat we are left with is defendant's failure to complete his contracted-for performance," which "is not a duty imposed by the law upon all, the violation of which gives rise to a tort action" but, instead, is "a duty arising out of the intentions of the [contracting] parties themselves and owed only to those specific individuals to whom the promise runs." [*Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 164; 809 NW2d 553 (2011), quoting *Hart v Ludwig*, 347 Mich 559, 565-566; 79 NW2d 895 (1956) (alternations in original).]

Simply alleging that defendants breached the Supply Agreement intentionally, or did so with malicious intent, is insufficient to overcome plaintiff's burden. Plaintiff was required to allege a breach of a duty separate from that imposed by the Supply Agreement. Accordingly, the trial court did not abuse its discretion when it denied plaintiff's motion to amend.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).


/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood

-7-