594 N.W.2d 81 (1999)
234 Mich. App. 387
ERB LUMBER, INC., Plaintiff-Appellee,
v.
Homeowner Construction Lien Recovery Fund, Defendant-Appellant, and
Gaylord GIDLEY and Darlene Gidley, Defendants-Appellees,
and Standard Federal Bank, Defendant.
Docket No. 202743.
Court of Appeals of Michigan.
Submitted December 9, 1998, at Lansing.
Decided March 5, 1999, at 9:25 a.m.
Released for Publication June 10, 1999.
*83 UAW-GM Legal Services Plan (by Beth Ellen Everson), Lansing, for Gaylord and Darlene Gidley.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, Michael A. Lockman and Michael G. Frezza, Assistant Attorneys General, and Robert N. Swartz, Special Assistant Attorney General, for the Homeowners Construction Lien Recovery Fund.
Before: MARK J. CAVANAGH, P.J., and MARKMAN and SMOLENSKI, JJ.
*82 MARKMAN, J.
Defendant Homeowner Construction Lien Recovery Fund (the fund) appeals as of right the trial court's ruling that it was responsible for the payment of plaintiff Erb Lumber, Inc.'s construction lien on defendants Gaylord and Darlene Gidley's property. We affirm.
This appeal from an action to foreclose a construction lien on a residential structure presents a dispute between the Gidleys and the fund concerning who is responsible for paying plaintiff Erb Lumber for construction materials furnished to a now-bankrupt general contractor for a renovation project on the Gidleys' residence. The Gidleys hired a licensed general contractor, doing business as Central Michigan Construction, to build an addition on their house for a total modified contract price of $36,780.90. The Gidleys paid the contractor uncontested amounts totaling $29,728.90 during the construction because the contractor informed the Gidleys *84 that he needed the money in advance to pay for materials. The contractor purchased construction materials for the project totaling $9,572.79 on credit from Erb Lumber. On December 18, 1996, the contractor presented the Gidleys with a final bill. Because the Gidleys claimed that the work was incomplete, they wrote a check for only part of the remaining amount. Mr. Gidley testified that after the contractor departed, he noticed that the contractor had written down the plumber's name and Erb Lumber along with particular numbers, which Mr. Gidley assumed was the amount the contractor owed them. The contractor endorsed the Gidleys' check over to Erb Lumber. However, before the check could be cashed, the Gidleys stopped payment on learning of the contractor's intention to declare bankruptcy. Subsequently, the contractor did declare bankruptcy and Erb Lumber sought to foreclose a lien that it recorded against the Gidleys' property for the amount of the contractor's unpaid balance of $6,822.59 and time-price differentials in the amount of $1,900.21. The fund, created by statute to provide payment to subcontractors or suppliers when a homeowner has already paid a contractor once in full for an improvement to his house but the contractor misused or misappropriated the money without first paying the supplier,[1] was properly joined as a defendant pursuant to M.C.L. § 570.1203(4); MSA 26.316(203)(4).
Following a bench trial, the trial court determined that on the basis of the many unfinished or poorly finished tasks, as well as "out-of-pocket" costs paid by the Gidleys because of the poor work, the Gidleys should receive credit for the remaining $7,052 balance on the unabated contract price of 36,780.90. The court stated that "the amount of money paid by Mr. Gidley to [the contractor] fully compensates [the contractor] for the improvement Mr. Gidley received from the work performed by [the contractor] in building the addition." In addition, the court found that "[f]rom the beginning of the construction Mr. Gidley paid [the contractor] in advance for the work to be done. This was done because [the contractor] informed Mr. Gidley that he needed the money to pay Plaintiff Erb Lumber for project materials."[2] The court concluded that "[the contractor] having received $29,728.90 and not having first paid Erb Lumber is found by this Court to have improperly retained or used the proceeds." Thus, the court ruled, Erb Lumber was precluded from foreclosing its construction lien because the Gidleys had fully paid for the improvement they received, and the fund was responsible for paying the $8,722.80 to its member, Erb Lumber.
The fund argues on appeal that the Legislature did not intend for the fund to pay its members in place of homeowners where a court reduces the contract price because of a contract breach by the contractor. This issue requires that we look to the relevant provisions of the Construction Lien Act, M.C.L. § 570.1101 et seq.; MSA 26.316(101) et seq. Statutory interpretation presents a question of law that we undertake de novo. Michigan Basic Property, Ins. Ass'n v. Ware, 230 Mich.App. 44, 48, 583 N.W.2d 240 (1998). The fundamental aim of such judicial interpretation is to give effect to the intent of the Legislature. Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc., 456 Mich. 511, 515, 573 N.W.2d 611 (1998). We look first to the specific language of the statute, and if it is "clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." USAA Ins. Co. v. Houston General Ins. Co., 220 Mich.App. 386, 389, *85 559 N.W.2d 98 (1996). The trial court's factual findings must be accepted unless clearly erroneous. Frericks v. Highland Twp., 228 Mich.App. 575, 583, 579 N.W.2d 441 (1998).
Section 203 of the Construction Lien Act, M.C.L. § 570.1203; MSA 26.316(203), sets forth the requirements that must be fulfilled (1) by the homeowner in order for the homeowner to avoid paying the lienholder for amounts already paid to the contractor and (2) by the lienholder before recovery from the fund may be sought in lieu of payment by the homeowner. It provides, in pertinent part:
(1) A claim of construction lien shall not attach to a residential structure, to the extent payments have been made, if the owner or lessee files an affidavit with the court indicating that the owner or lessee has done all of the following:
(a) Paid the contractor for the improvement to the residential structure and the amount of the payment.
(b) Not colluded with any person to obtain a payment from the fund.
(c) Cooperated and will continue to cooperate with the department in the defense of the fund.
(2) In the absence of a written contract pursuant to section 114, the filing of an affidavit under this section shall create a rebuttable presumption that the owner or lessee has paid the contractor for the improvement. The presumption may be overcome only by a showing of clear and convincing evidence to the contrary.
(3) Subject to section 204, a person who has recorded a claim of lien and who is precluded from recovering a construction lien under subsection (1) may recover from the fund the amount for which the lien is established. [MCL 570.1203; MSA 26.316(203).]
The Construction Lien Act "was intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." Vugterveen Systems, Inc. v. Olde Millpond Corp., 454 Mich. 119, 121, 560 N.W.2d 43 (1997). Section 203 was meant to provide for the payment of subcontractors and suppliers, but also protect homeowners from paying twice for improvements to their property where the contractor took the payment from the homeowners but did not pay the subcontractor or supplier. Abode Bldg. Materials, Inc. v. Webster, 185 Mich.App. 655, 659, 462 N.W.2d 806 (1990). When potential lien claimants have done everything required of them under the act, but are precluded under § 203, from recovering because of a homeowner's prior payment to a contractor, they may recover the amount of their lien from a fund set up for that purpose. MCL 570.1201; MSA 26.316(201). In this case, it is undisputed that the Gidleys filed an affidavit pursuant to M.C.L. § 570.1203(1); MSA 26.316(203)(1) that created a rebuttable presumption that they had paid the contractor for the improvement by Erb Lumber. MCL 570.1203(2); MSA 26.316(203)(2).[3] There is also no dispute that Erb Lumber did everything required under the act; thus, Erb Lumber was required to join the fund as a defendant in this case. MCL 570.1203(4); MSA 26.316(203)(4).
Under the structure of the act, there are three postures that the fund may adopt concerning the lien claimant. If the fund makes a payment to a lien claimant, the fund is subrogated to the rights of the person to whom payment was made, and it may maintain an action against the contractor who did not pay the lien claimant. MCL 570.1205; MSA 26.316(205). The *86 fund may also, in the action to foreclose, assert any defense that would have been available to the owner of the residential structure. MCL 570.1203(5); MSA 26.316(203)(5). Additionally, as in the case at hand, the fund may attempt to show that the lien claimant is not entitled to payment from the fund because the lien claimant should prevail in enforcing its lien against the owner of the residential structure. MCL 570.1203(1), (2), and (6); MSA 26.316(203)(1), (2), and (6). Thus, the fund had the burden of showing by clear and convincing evidence that the Gidleys did not pay the contractor for the improvement supplied by Erb Lumber.
The fund asserted at trial and on appeal that, had the Gidleys paid the contractor the full and unabated contract price, Erb Lumber would have been paid, apparently by the contractor, without the involvement of the fund. However, the fund argues, because the trial court reduced the total amount that the Gidleys were required to pay the contractor because of the contractor's negligence or breach of contract, the Gidleys' consequential damages were compensated at the fund's expense. In other words, the fund argues that in order for the homeowner to have "[p]aid the contractor for the improvement," M.C.L. § 570.1203(1)(a); MSA 26.316(203)(1)(a), the homeowner must have paid the full price for the entire construction job. We understand the fund's argument, as well as that of the dissent, who also states that the Gidleys were required to make all the payments required by the contract. Yet under the plain language of the act, an improvement "means the result of labor or material provided by a contractor, subcontractor, supplier, or laborer...." MCL 570.1104(7); MSA 26.316(104)(7). By comparison, the term "project," as defined by the act, "means the aggregate of improvements contracted for by the contracting owner." MCL 570.1106(2); MSA 26.316(106)(2). The proper amount of a lien is the lien claimant's contract price less payments made on that contract to the lien claimant. Id; Erb Lumber Co. v. Homeowner Constr. Lien Recovery Fund, 206 Mich.App. 716, 720, 522 N.W.2d 917 (1994). Hence, in our judgment, the scope of the improvement at issue is dependent on what was provided by the lien claimant and does not necessarily encompass the entire project. Therefore, while "improvement" might be synonymous with "project" relative to the general contractor, with regard to a supplier, the improvement is limited to the materials supplied. Therefore, the Gidleys' "prior payment" defense under M.C.L. § 570.1203(1); MSA 26.316(203)(1) to the attachment of Erb Lumber's lien was not limited to the extent that they paid the contractual amount of the entire project to the contractor, but rather, to the extent that they paid the contractor for the improvement (i.e., the construction materials) that Erb Lumber provided.
The dissent relies on language in Vugterveen, supra at 128, 560 N.W.2d 43 stating that M.C.L. § 570.1107(6); MSA 26.316(107)(6) "was designed to protect an owner from excessive liens by allowing an owner to rely on the price set forth in its contract with the general contractor"to conclude that full payment of the entire contract price is necessary in order to require the fund to pay a lien. However, in Vugterveen, the homeowner argued that it should not have to pay more than the original contract price, as opposed to the greater amount ultimately agreed to when the homeowner signed a second contract after firing the plaintiff subcontractor and the contractor under the first contract; so the issue of contract price as the maximum lien amount allowed was relevant to the case. We agree that the homeowners here should be allowed to rely on their overall contract price so that they would not be forced to pay more for liens than the price stated in the general contract, see Vugterveen, supra at 124, 560 N.W.2d 43, but we do not believe that Vugterveen mandates that the full contract amount must actually be paid before a homeowner has a defense *87 to a partial-subcontractor's lien. Here, there is no dispute that Erb Lumber's lien does not exceed the contract price here, and in fact there was really no dispute regarding the amount of Erb Lumber's claim at all. Therefore, the overall contract price is not an issue here, as it was in Vugterveen.
Thus, in our judgment, the only inquiry relevant to the fund's interest here is whether, and to what extent, the Gidleys made payments to the contractor for the materials supplied by Erb Lumber. We note that it is unclear whether, and to what extent, the trial court based its decision that the Gidleys had fulfilled the statutory requirements on the fact that, because of the credit of $7,052, the Gidleys had fully paid the contractor all that was required under the contract. However, to the extent that the trial court did determine that the credited amounts for ancillary damages such as additional living expenses were included in the amount "[p]aid the contractor for the improvement," as the fund argues, it did so improperly. In our judgment, effectively excusing payment for Erb Lumber's materials because the homeowners suffered ancillary damages as a result of the contractor's poor workmanship would not further the purpose of the statute; which is to protect homeowners from paying for the same improvement twice, not to solve all the homeowner's problems at the expense of any payment to the lien claimant. However, we need not address this issue further,[4] because the trial court here did determine that the $29,728.90 the Gidleys gave to the contractor included payment for the $9,572.79 worth of materials furnished by Erb Lumber. In our judgment, this conclusion is not clearly erroneous, because the contractor specifically informed the Gidleys that their advance payments were needed to pay for materials. The court found that the payments that the Gidleys intended to go to Erb Lumber were included in the advance payments made by the Gidleys to the contractor. The court determined that the payments for Erb Lumber were not, as the fund argues, part of the final check payment on which the Gidleys stopped payment, even if the contractor would, in fact, have used such final payment to pay Erb Lumber. It is not our responsibility here to make a separate finding of fact, but instead to review the trial court's findings, which were made after fully seeing and hearing the parties' testimony and arguments. On the basis of the record, we do not find clear error in this determination,[5] even though we recognize *88 that some evidence was also introduced that the Gidleys may have been aware that their final check was to be used to pay Erb Lumber. Where, as here, it has been determined that homeowners have already paid a contractor for construction materials, the Legislature intended to protect them from having to pay for those materials a second time when the contractor retains or uses the proceeds without paying the supplier. Abode, supra at 659, 462 N.W.2d 806. The Construction Lien Act allocates to the fund the risk of an insolvent, but licensed, contractor's absconding with a homeowner's payment for materials provided to that contractor on credit by a fund member, provided the lien claimant/fund member and the homeowner each demonstrate their compliance with their obligations under the act. MCL 570.1203; MSA 26.316(203). Thus, the fund was properly required to compensate Erb Lumber under the particular circumstances of this case.
Affirmed.
MARK J. CAVANAGH, P.J., concurs.
SMOLENSKI, J. (concurring in part and dissenting in part).
I respectfully concur in part and dissent in part with respect to the majority's reasoning in this case. I also dissent from the result reached. For the following reasons, I would vacate the final order entered in this case and remand.
The trial court found that Erb Lumber, Inc., had a perfected construction lien in the amount of $8,722.80. However, the trial court found that Erb Lumber's construction lien did not attach to the Gidley residence because the Gidleys had "[p]aid the contractor for the improvement to the residential structure," and otherwise satisfied the requirements of subsection 203(1) of the Construction Lien Act (CLA), M.C.L. § 570.1203(1); MSA 26.316(203)(1). In determining that the Gidleys had "[p]aid the contractor for the improvement to the residential structure," the court first took the modified contract price of $36,780.90 and deducted the $29,728.90 in payments the Gidleys had actually made to the contractor, leaving a $7,052 balance due on the contract. The court then granted the Gidleys a setoff in that amount for consequential damages they allegedly incurred as a result of faulty work by the contractor.
The majority concludes that the trial court erred in granting the Gidleys a setoff. I agree. Any claim by the Gidleys that the contractor's work was faulty should have been the subject of a separate contract action. Vugterveen Systems, Inc. v. Olde Millpond Corp., 454 Mich. 119, 132, n. 5, 560 N.W.2d 43 (1997). The fund should not be required to be the insurer of a dissatisfied homeowner's breach of contract claim against a contractor.
However, the majority nevertheless affirms the fund's liability. In so doing, the majority finds that "the Gidleys' `prior payment' defense under M.C.L. § 570.1203(1); MSA 26.316(203)(1) to the attachment of Erb Lumber's lien was not limited to the extent that they paid the contractual amount of the entire project to the contractor, but rather [sic], to the extent that they paid the contractor for the improvement (i.e., the construction materials) that Erb Lumber provided." Ante at 86. The majority affirms the trial court's *89 finding that the partial payments the Gidleys made to the contractor included payment for the materials supplied by Erb Lumber.[1] The majority concludes that because the Gidleys had already made partial payments that included payments intended for Erb Lumber, the Legislature intended to protect them from having to pay for those same materials a second time. The majority thus affirms the trial court's order directing the fund to pay Erb Lumber the amount of its lien. I dissent from this result, which grants the protection afforded by the CLA to a homeowner who has not even paid the contract price once, much less overpaid.
In particular, I disagree with the majority's construction of subsection 203(1)(a). A leading commentator has construed this subsection as follows:
The [CLA] gives an owner or lessee of a residential structure absolute protection from having a construction lien asserted against the property if he or she has made all the payments required by the contract with the contractor. See MCLA 570.1203(1), M.S.A. § 26.316(203)(1). In such a case, the subcontractor, supplier, or laborer must look to the Residential Lien Recovery Fund for payment of the claim. If the owner fails to make all the payments, the residential structure is subject to all the methods and procedures for foreclosing on a construction lien in a nonresidential situation. MCLA 570.1203(3)(a), M.S.A. § 26.316(203)(3)(a). [1 Cameron, Michigan Real Property Law (2d ed.), § 19.37, p. 822 (emphasis supplied).]
I agree with this construction. In this case, despite the affidavit filed by the Gidleys, there is no dispute that they did not make all the payments required by the contract. Thus, Erb Lumber's construction lien attaches to the Gidleys' property, at least to the extent that they did not make all the payments required by the contract.
Where a homeowner's real property is subject to a construction lien, the CLA affords the homeowner protection against having to pay twice for the same improvement. This protection is found in subsection 107(6) of the CLA, M.C.L. § 570.1107(6); MSA 26.316(107)(6), which provides as follows:
If the real property of an owner or lessee is subject to construction liens, the sum of the construction liens shall not exceed the amount which the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by any and all additions, deletions, and any other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor's sworn statement or a waiver of lien, in accordance with this act.
Subsection 107(6) "was designed to protect an owner from excessive liens by allowing an owner to rely on the price set forth in its contract with the general contractor." Vugterveen, supra at 128, 560 N.W.2d 43. The phrase "`payments made' in subsection 107(6) refers to payments made on the specific contract between the owner and the person with whom the owner contracted." Id. at 129, 560 N.W.2d 43. Thus, under subsection 107(6), a homeowner has a defense to a construction lien if the homeowner can show that the sum of the payments made pursuant to sworn statements and waivers of lien under the homeowner's contract plus the amount of the lien exceeds the price of the homeowner's contract. Id.
In this case, the trial court determined that the modified contract price was $36,780.90. The trial court also determined that the amount of Erb Lumber's construction lien was $8,722.80. The court *90 likewise determined that the Gidleys had made payments to the contractor on the contract totaling $29,728.90. However, the court did not determine whether, or to what extent, these payments were made pursuant to sworn statements or waivers of lien. Vugterveen, supra at 129, n. 2, 560 N.W.2d 43. Thus, I would remand to the trial court for this determination. Id. at 130, 560 N.W.2d 43. Erb Lumber has a valid lien against the Gidleys' real property to the extent that the lien and the payments made by the Gidleys pursuant to sworn statements or waivers of lien on their contract with the contractor do not exceed the price of this contract. Id. To the extent that Erb Lumber has a valid lien, it may seek to foreclose the lien. Cameron, p. 822. To the extent that Erb Lumber does not have a valid lien, it may look to the fund for payment of its claim. Id.
In summary, I would vacate the trial court's order discharging the construction lien on the Gidleys' property and directing the fund to pay Erb Lumber the amount of the lien. I would remand for further proceedings consistent with this opinion.
NOTES
[1] MCL 570.1201; MSA 26.316(201).
[2] The record indicates that the contractor did tell the Gidleys that he needed advance payments in order to pay for materials, but did not specify to whom the payments would be made. We understand the trial court's statement to be a finding of fact that the payments were made by the Gidleys in order to pay for materials from Erb Lumber.
[3] The trial court ruled that the written contract between the Gidleys and the contractor was not a complete integration of the terms of the contract. This finding is not disputed by the parties on appeal. Thus, the filing of the affidavit by the Gidleys created a rebuttable presumption that they had paid the contractor for the improvement. MCL 570.1203(2); MSA 26.316(203)(2).
[4] Because we affirm on the basis of the trial court's specific finding that the Gidleys intended their advance payments to pay for Erb Lumber's materials, we are not constrained to, and thus do not, make any findings or conclusions regarding the trial court's credit for direct damages to the Gidleys' home or unfinished work under the contract.
[5] The dissent would remand to the trial court for a determination whether, or to what extent, payments were made pursuant to sworn statements or waivers of lien. See M.C.L. § 570.1107(6); MSA 26.316(107)(6). Subsection 107(6) generally states that a construction lien shall not exceed the amount that the owner agreed to pay for the improvement, less payments made pursuant to a contractor's sworn statement or a waiver of lien. However, there was never any dispute in this case regarding the amount owed to Erb Lumber, the amount paid to Erb Lumber by the contractor, or that the homeowners had paid any money intended for Erb Lumber to the contractor and not directly to Erb Lumber. The parties did not argue the issue of sworn statements or waivers of lien at trial or on appeal. In fact, although the parties cited Vugterveen, on which the dissent relies, the parties did not even mention the issue of sworn statements or waivers of lien. The parties and the trial court seem to agree that all parties did everything necessary under the statute to either collect on the lien or defend against the lien so that the fund became responsible for payment, except for the questions of the amount of payment to the contractor intended for Erb Lumber and the necessity of full contract payment. Under these circumstances, we believe that it is not our duty to do the jobs of the parties by investigating every provision of the statute for possible avenues of reversal, especially where the parties do not dispute compliance. In addition, the purpose of a sworn statement is to enable the homeowner "to retain out of any money due or to become due to the contractor an amount sufficient to pay the subcontractors...." Nurmi v. Beardsley, 275 Mich. 328, 329, 266 N.W. 368 (1936). Here, there is no argument that the homeowners may have directly paid Erb Lumber, which would reduce the lien amount and implicate subsection 107(6). In contrast, the Vugterveen Court discussed sworn statements and waivers of lien because there was some uncertainty about whether the homeowner had directly paid the subcontractor in part pursuant to subsection 107(6). Thus, we conclude that remanding the case at hand for a determination under subsection 107(6) is unnecessary because the parties do not dispute the amount of the lien or that payments were made only to the contractor and not directly to Erb Lumber.
[1] However, it must likewise be noted that the trial court also found that the contractor did not use these payments to pay Erb Lumber.