766 N.W.2d 30 (2008)
CHURCH & CHURCH, INC.
v.
A-1 CARPENTRY.
Docket No. 275823.
Court of Appeals of Michigan.
Submitted July 10, 2008, at Detroit.
Decided August 19, 2008.
Approved for Publication October 21, 2008, at 9:00 a.m.
*33 Carthew Chapman, PLLC, Troy (by Paul Carthew and Lila Z. Nikollaj), for Church & Church, Inc.
Howard and Howard Attorneys, P.C. (by Matthew B. Woodworth), Royal Oak, for Charter One Bank.
Plunkett Cooney (by Ernest R. Bazzana, Detroit and Kurt Riedel, Bloomfield Hills), for Satish and Aarti Doshi.
Michael A. Cox, Attorney General, B. Eric Restuccia, Solicitor General, and Kelley T. McLean, Assistant Attorney General, for the Homeowner Construction Lien Recovery Fund.
Burchfield, Park & Pollesch, P.C. (by Shari L. Pollesch), Brighton, for Fox Brothers Development Company.
Urbani & Marshall, P.C. (by Anthony Urbani, II), Roseville, for C & R Plumbing & Heating, Inc.
Bernardi, Ronayne & Glusac, a Professional Corporation, Plymouth (by Elise N. Reed, Royal Oak), for AKRS Properties Investment, LLC, Ban Cassab, and FGR Properties, LLC.
Before: METER, P.J., and TALBOT and SERVITTO, JJ.
PER CURIAM.
Plaintiff, Church & Church, Inc. (Church), appeals, by leave granted, the trial court's entry of summary disposition in third-party defendants AKRS Properties Investment, LLC, and Ban Cassab's favor, and the dismissal of plaintiff's claims seeking judicial foreclosure of its mortgages on five real properties. Defendant Fox Brothers Development Company appeals by leave granted the trial court's entry of summary disposition in favor of cross-defendants Satish and Aarti Doshi's (the Doshis) favor concerning a mortgage Fox Brothers held on the Doshis' real property. Defendant C & R Plumbing & Heating, Inc. (C & R), appeals, also by leave granted, the trial court's order of summary disposition in the Doshis' favor discharging C & R's construction lien on the Doshis' property and its denial of C & R's request to amend its complaint to add a claim against cross-appellee, the Homeowner Construction Lien Recovery Fund. We affirm.
This case finds its origin in a lawsuit filed by Church against a builder, Gemcraft Homes, Inc., for Gemcraft's failure to pay Church for building materials it had supplied to Gemcraft for improvements to *34 numerous properties in southeast Michigan. Church recorded liens and mortgages on certain properties for which materials were furnished. Seeking foreclosure of its mortgages and liens in the lawsuit, Church named the other lienholders, mortgagees, and those who otherwise had an interest in the properties as necessary defendants in the lawsuit, including Fox Brothers and C & R.
This case was eventually consolidated in the trial court with several other cases in which contractors, subcontractors, and suppliers had sued Gemcraft for, among other things, defaulting on mortgages and defaulting on contracts or subcontracts for materials or services provided in connection with the construction of multiple properties. These consolidated cases contain numerous claims, cross-claims, and counterclaims, and various parties sought foreclosure on mortgages and liens on a multitude of properties in the proceedings. The present appeals concern themselves with several of these foreclosure claims.

CHURCH'S APPEAL
Relevant to this appeal, Church held construction liens on five properties owned by Gemcraft. Before initiation of this lawsuit, however, Church agreed to release its construction liens in exchange for the execution of mortgages on the properties in Church's favor. Gemcraft apparently defaulted on the mortgages, and the five properties were among those for which Church sought judicial foreclosure in its lawsuit against Gemcraft.
Defendant Charter One Bank (Charter One) also held mortgages on these five properties and had recorded its mortgages before Church's mortgages were recorded. Charter One was named as a defendant in Church's lawsuit and filed a cross-claim against Gemcraft for, among other things, breach of contract and additionally sought judicial foreclosure on the five properties.
In April 2004, before the Church lawsuit was resolved, Charter One dismissed the foreclosure count of its cross-claim against Gemcraft. Approximately one month later, Charter One assigned its interest in and sold its loans on the subject properties to third-party defendant FGR Properties, LLC (FGR). FGR thereafter foreclosed on the properties by advertisement, and the properties were ultimately quitclaimed to AKRS Properties Investment, LLC, and its owner/president Ban Cassab.
In 2006, Church filed a motion for partial summary disposition, asserting that it was entitled to judicial foreclosure of its mortgages on the five properties, that the sale of the properties by FGR did not extinguish plaintiff's interest in the properties, and that the foreclosure by advertisement should be declared void. The trial court ultimately granted AKRS and Cassab's countermotion for summary disposition, dismissing Church's claims with respect to the five properties.
This Court reviews de novo a trial court's decision regarding a motion for summary disposition. Arthur Land Co., LLC v. Otsego Co., 249 Mich.App. 650, 661, 645 N.W.2d 50 (2002). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a claim. Smith v. Globe Life Ins. Co., 460 Mich. 446, 454, 597 N.W.2d 28 (1999). When reviewing a motion under this subrule, the court must consider all the documentary evidence in the light most favorable to the nonmoving party. Maiden v. Rozwood, 461 Mich. 109, 120, 597 N.W.2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." Id.
On appeal, Church contends that MCL 600.3204 provides for foreclosure by advertisement (otherwise known as statutory *35 foreclosure) only if that party has not already sued on the underlying debt. According to Church, Charter One's cross-claim against Gemcraft for breach of contract is an action to recover the debt secured by the mortgages and Charter One's dismissal of only the judicial foreclosure claim precluded FGR, pursuant to MCL 600.3204, from foreclosing on the properties by advertisement. We disagree.
MCL 600.3204(1) provides as follows:
A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
(c) The mortgage containing the power of sale has been properly recorded.
(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
There is no question that Charter One filed a cross-complaint against Gemcraft for breach of contract because of Gemcraft's default on mortgages and loan documents concerning the properties at issue and for foreclosure of the mortgages held on the properties. However, Charter One dismissed its foreclosure claim and thereafter assigned its interest in and sold its loans on the subject properties to FGR. Despite Church's contrary contention, Charter One's actions in divesting itself of any and all rights, title, and interest in the subject properties acted as an implied dismissal of all its claims concerning the properties.
In Saph v. Auditor General, 317 Mich. 191, 202, 26 N.W.2d 882 (1947), an individual, who brought an action to cancel taxes on real property he held, deeded the property to another during the pendency of the lawsuit. Noting that the plaintiff had divested himself of all title and interest in the property involved in the lawsuit, our Supreme Court declared, "[a] court of equity will not permit a party who has voluntarily divested himself of any claim to continue litigating." Our Supreme Court has previously held that with regard to a party's assignment of his or her interest in a property that was the subject of a lawsuit, while not operating strictly as an abatement of the lawsuit, "its effect was much the same, as it left no party complainant before the court competent to prosecute it." Webster v. Hitchcock, 11 Mich. 56, 58 (1862). The Court faced a similar situation in Brewer v. Dodge, 28 Mich. 359, 360-361 (1873):
It appears from complainant's own showing that in June 1870, he conveyed the premises in dispute to one Charles E. Ritson. Ritson never made himself a party to the suit. By that conveyance complainant ceased to have any further interest in the controversy. If any one was injuriously affected by any subsequent proceedings, it was Ritson, and not complainant. It was no concern of his after he had sold out all his interest. A court of equity must have the real parties before it, and will not permit a party who has voluntarily divested himself of any claim on his own behalf, to continue litigating. As soon as a complainant assigns his rights, the suit, as to him, ceases, and becomes as defective *36 for want of a complainant as if it had abated by his death.
Here, Charter One dismissed its foreclosure claim. The breach of contract action was based on Gemcraft's failure to pay the mortgagesthe same basis as the foreclosure claim. When Charter One assigned the mortgages and all of its rights, title, and interest as mortgagee to FGR, it no longer had any interest whatsoever in the mortgages. The breach of contract claim being based on the mortgage documents, and Charter One no longer having an interest in the mortgages, Charter One had no claim to continue pursuing against Gemcraft.
That a party has divested itself of interest in the real property that is the subject of the lawsuit does not, however, require dismissal of the lawsuit. As indicated by Church, Charter One could have continued with the breach of contract claim against Gemcraftthe operative word here being "could." MCR 2.202(B) governs the substitution of parties when there has been a transfer or change of interest and provides, in relevant part:
If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity.
Notably, the use of the term "may" instead of "shall" in this court rule indicates discretionary rather than mandatory action. Murphy v. Ameritech, 221 Mich.App. 591, 600, 561 N.W.2d 875 (1997). Thus, Charter One, as the original party, could have continued in the breach of contract action. There is no allegation, however, that any action on the breach of contract claim continued after Charter One assigned the mortgages to FGR, and there is no assertion that anyone moved to have FGR added or substituted as a party. Charter One's claim for breach of contract could thus be deemed discontinued, and FGR was free to pursue foreclosure by advertisement pursuant to MCL 600.3204.
Church next asserts that the foreclosure by advertisement should have been declared void, because Michigan law does not allow for foreclosure by advertisement of a property when a judicial foreclosure on the same property is pending. We disagree.
We would first note that Church stipulated the dismissal of all its claims against FGR. FGR having been the party who foreclosed on the properties through advertisement, it is questionable whether Church's claims of an invalid foreclosure by advertisement have any merit. Nevertheless, we will address the argument.
The right to foreclosure by advertisement is statutory. Calaveras Timber Co. v. Michigan Trust Co., 278 Mich. 445, 450, 270 N.W. 743 (1936). Such foreclosures are a matter of contract, authorized by the mortgagor, and ought not be hampered by an unreasonably strict construction of the law. Cramer v. Metro. S&L Ass'n, 401 Mich. 252, 261, 258 N.W.2d 20 (1977). Harsh results may and often do occur because of mortgage foreclosure sales, "but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made." Calaveras Timber Co, supra, at 454, 270 N.W. 743.
Church contends that it was the intent of the Michigan Legislature, in enacting MCL 600.3201 et seq., to promote the election of remedies involving foreclosures of the same property. Church cites no law, however, to support this assertion. Moreover, *37 that is not an entirely correct statement regarding the purpose of the statute:
The [precursor] statute [to MCL 600.3204] forbids the beginning of a statutory foreclosure if any "suit or proceeding shall have been instituted at law, to recover the debt then remaining secured" unless "the same has been discontinued, or that an execution upon the judgment rendered therein has been returned unsatisfied in whole or in part." [1871 CL] 6913. This statute clearly refers to suits on the debt, and not to foreclosure proceedings on the mortgage, and its object is to prevent proceedings, at the same time to prosecute the personal liability of the mortgagor and pursue the land. It is to prevent a simultaneous double vexation, which was allowed in England, but not generally here. [Lee v. Clary, 38 Mich. 223, 227 (1878)].
According to United States v. Leslie, 421 F.2d 763, 766 (C.A.6, 1970), "[t]he language of Lee v. Clary is unmistakably clear that it is the purpose of the statute to force an election of remedies which if not made would create the possibility that the mortgagee could foreclose the mortgage and at the same time hold the maker of the note personally liable for the debt. Accord, Larzelere v. Starkweather, 38 Mich. 96, 105 (1878)."
More correctly stated, then, the intention of the Legislature with respect to the foreclosure statutes was to force an election of remedies by a mortgagee concerning a single debt: i.e., the same mortgagee cannot simultaneously maintain a lawsuit for judicial foreclosure and a foreclosure by advertisement, because it would allow for double recovery on the same debt. The statute thus serves to protect the mortgagornot another mortgagee, as argued by Church.
Here, there is no election of remedy issue because Charter One and Church are two different mortgagees pursuing two different mortgage debts. There is no concern, then, that the mortgagor would be forced to pay a double recovery on the same debt. Moreover, we are directed to no authority that limits one mortgagee's remedy election to that chosen by a separate mortgagee.
That the Legislature intended to limit foreclosure proceedings in the manner suggested by Church is also not borne out by the statutory language in the foreclosure statutes. MCL 600.3204 provides that a party may foreclose if a default on the mortgage has occurred and an action at law has not been instituted to recover the debt secured by the mortgage or the action or proceeding has been discontinued. Use of the word "the" rather than "a" suggests that the Legislature did not concern itself with multiple mortgagees pursuing different debts secured by the same property.
MCL 600.3105(2), which governs judicial foreclosures, similarly provides:
After a complaint has been filed to foreclose a mortgage on real estate or land contract, while it is pending, and after a judgment has been rendered upon it, no separate proceeding shall be had for the recovery of the debt secured by the mortgage, or any part of it, unless authorized by the court.
By its terms, MCL 600.3105 only prohibits a separate proceeding for recovery of a debt secured by a mortgage if a proceeding has already been initiated to recover the same debt secured by the same mortgage. Again, use of the word "the" before "debt" and "mortgage" limits a party holding a single debt secured by a single mortgage to the election of either judicial or statutory foreclosure by advertisement to prevent double recovery on the same debt.
*38 Additionally, Church was not left without recourse because of FGR's election of foreclosure by advertisement. Church has not contended that it was unaware of the foreclosures by advertisement. In fact, an FGR representative submitted an affidavit indicating that during its negotiations with Charter One to obtain the properties at issue, he was in regular contact with Church's counsel and advised counsel of FGR's intent to purchase the properties. The foreclosure of the properties was thereafter held by advertisement. Church, then, could have sought to enjoin the sales in court, or could also, as it did here, have sought to have the foreclosures declared void. It could also have redeemed the properties after the foreclosures within the redemption period, because a junior mortgagee retains the right to redeem from the mortgage sale by paying the amount due on the senior mortgage with interest. See, e.g., Titus v. Cavalier, 276 Mich. 117, 120, 267 N.W. 799 (1936).
Church also argues that priority of its and Charter One's mortgages on the properties was an unresolved issue in the judicial action, so that the foreclosure by advertisement was inappropriate. Church asserts that it is not asking this Court to determine priorities, but that the proper forum for such a determination is in the lower court. The trial court, however, did address and resolve the issue of priority in its October 11, 2006, opinion and order. The trial court noted:
... Plaintiff does not dispute that the interest it seeks to enforce in this action was acquired after the Bank acquired and recorded its mortgage. Rather, Plaintiff argues that its claim should be treated as if it predated the Bank's claim under the doctrine of equitable subrogation. This Court disagrees. Plaintiff had an opportunity to ensure that its claim was superior to the bank's, but chose to subordinate its claim by converting it to a mortgage and recording if after the bank recorded its mortgage. In this context, equitable subrogation is not appropriate.
According to the trial court, then, there was no cognizable dispute regarding priority. Church was well aware that it recorded its mortgages on the properties after Charter One recorded its mortgages and thus possessed mortgages junior to those of Charter One. The holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers. Richards v. Tibaldi, 272 Mich.App. 522, 726 N.W.2d 770 (2006). Church's argument (here and in the trial court) that its admittedly discharged construction liens should somehow be construed as having priority is without support. There being no priority dispute with regard to the mortgages held by Church and Charter One and there being no dispute regarding the amount of the mortgages, we affirm.

FOX BROTHERS' APPEAL
Fox Brothers' appeal concerns a single parcel of property, known as 7 Waltonshire, that was originally owned by Gemcraft and for which Gemcraft served as general contractor. According to Fox Brothers, Gemcraft granted it a mortgage on this property in the amount of $47,000 to secure its credit account with Fox Brothers (which provided windows, siding, and roofing on several of Gemcraft's projects). The mortgage was recorded in 2001 and provides that the mortgage is intended to secure the payment under the mortgage note of the sum of $47,000. A promissory note executed on the same date as the mortgage provides that "[t]his Mortgage Note is secured by a mortgage granting security interest in three (3) parcels *39 of land" and describes the three parcels, one of which is 7 Waltonshire.
In January 2003, Gemcraft and Fox Brothers entered into a security agreement whereby Fox Brothers agreed to release a secured interest on one of the three properties referenced in the promissory note and Gemcraft agreed, in turn, to amend the secured interest Fox Brothers had on the other two properties referenced in the promissory note so that Fox Brothers was secured against each property separately in the amount of $47,000, with such amendment retroactive to the initial date of the promissory note. In March 2003, a first amended mortgage note and mortgage reflecting this agreement were executed. Neither of the amended documents was recorded.
Sterling Bank and Trust also held a mortgage on 7 Waltonshire and foreclosed on the same by advertisement while the Church lawsuit was pending. Sterling Bank then sold 7 Waltonshire to the Doshis by covenant deed. The Doshis then became involved in the lawsuit, and summary disposition motions were eventually brought by parties with claims against 7 Waltonshire, including a motion by Fox Brothers seeking a ruling that it may foreclose on the property. The Doshis, however, claimed that the terms of the 2001 agreement between Gemcraft and Fox Brothers were satisfied and that any claim of an interest in 7 Waltonshire by Fox Brothers was thus discharged. The Doshis further claimed that they were bona fide purchasers with respect to the 2003 unrecorded amended mortgage and note between Gemcraft and Fox Brothers. The trial court granted summary disposition in favor of the Doshis, finding that they were bona fide purchasers for value of 7 Waltonshire.
Fox Brothers now contends that because the Doshis purchased 7 Waltonshire from Sterling Bank well after the Fox Brothers recorded their original mortgage on the property, the Doshis, were on notice of an interest held by Fox Brothers in the property and could not be bona fide purchasers for value with regard to Fox Brothers. We disagree.
Michigan's race-notice statute provides:
Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof. [MCL 565.29.]
This section applies to mortgages. Michigan Fire & Marine Ins. Co. v. Hamilton, 284 Mich. 417, 419, 279 N.W. 884 (1938).
A person takes in "good faith" if he or she takes without notice of a defect in the vendor's title. Michigan Nat'l Bank & Trust Co. v. Morren, 194 Mich. App. 407, 410, 487 N.W.2d 784 (1992). "Notice" in the context of real estate law can be actual or constructive and has been defined by our Supreme Court as follows:
When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. *40 [Kastle v. Clemons, 330 Mich. 28, 31, 46 N.W.2d 450 (1951).]
There is no question that Fox Brothers and Gemcraft were free to amend or extend their agreement concerning the debt owed Fox Brothers and the mortgage securing the debt. "It is well settled by the weight of authority that the parties to a mortgage originally intended to secure a particular debt may extend the security to the payment of a different debt or future advances as far as their respective rights are concerned." Riess v. Old Kent Bank, 253 Mich. 557, 562-563, 235 N.W. 252 (1931). The note, then, for additional debt could certainly be enforceable against Gemcraft. The issue presented here, however, is the effect on a third party of an unrecorded change to the debt.
The original mortgage and note indisputably provided for the payment of a single $47,000 debt, which was secured by interests in three parcels of land, one of which was 7 Waltonshire. The mortgage being duly recorded in 2001, the Doshis purchased 7 Waltonshire subject to the 2001 mortgage. However, because the 2003 mortgage and underlying note that expanded the debt were not recorded, the Doshis had no actual notice of such change. Fox Brothers argues that because the original mortgage was recorded and this litigation was pending, the Doshis should have made inquiry into the debt underlying the mortgage and litigation to determine whether the debt remained the same. However, Fox Brothers provides no authority suggesting that the Doshis had a legal duty to undertake such an inquiry. Because the Doshis received a covenant deed from Sterling Bank and the amended mortgage was not recorded as required by statute, and because the fact that a lawsuit was pending, absent any suggestion that the Doshis knew or should have suspected that the pending litigation involved anything other than what was contained in the public record, would not serve to give the Doshis constructive notice, we affirm the trial court's finding that the Doshis were bona fide purchasers for value of 7 Waltonshire with respect to the amended mortgage. The amended mortgage is thus void as against the Doshis.
In addition, because the only mortgage enforceable against the Doshis provided for a single $47,000 debt secured by 7 Waltonshire and two other properties and it is undisputed that Fox collected more than $47,000 from the sale of the other two properties, the first mortgage could be construed as paid in full and thus discharged.

C & R'S APPEAL
C & R's claim on cross-appeal also relates solely to 7 Waltonshire. C & R was hired by Gemcraft to install rough plumbing and plumbing fixtures in a number of Gemcraft's projects, including 7 Waltonshire. C & R received partial payment from Gemcraft for its services on 7 Waltonshire and recorded a lien against the property on August 20, 2002, for the outstanding balance of $7847.50. C & R was named in the Church lawsuit as a defendant and as an interest holder in 7 Waltonshire and filed a cross-claim for foreclosure on its construction lien.
The Doshis eventually moved for summary disposition, seeking to discharge all construction liens on 7 Waltonshire, asserting, with respect to C & R's lien, that it did not timely file its foreclosure action, thereby barring enforcement of its lien pursuant to MCL 570.1117. C & R offered no response to this particular argument, but moved to amend its complaint to add a claim against the Homeowner Construction Lien Recovery Fund. See MCL 570.1201. The trial court granted summary disposition in the Doshis' favor and *41 discharged C & R's lien, noting that because C & R did not address the statute of limitations argument, summary disposition based on the statute of limitations was appropriate. The trial court also denied C & R 's request to amend its complaint. We affirm.
MCL 570.1117 states, in relevant part:
(1) Proceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded.
* * *
(4) Each person who, at the time of filing the action, has an interest in the real property involved in the action which would be divested or otherwise impaired by the foreclosure of the lien, shall be made a party to the action.
Until a lienholder files a cross-claim and notice of lis pendens in a pending suit, he has not begun the proceedings required by statute for the enforcement of his liens. L.J. Mueller Furnace Co. v. Wayne Circuit Judge, 226 Mich. 672, 198 N.W. 248 (1924). The burden of proof is on a plaintiff to show compliance with statutory requirements necessary to establish a right of action to enforce a mechanic's lien. Skyhook Lift-Slab Corp. v. Huron Towers, Inc., 369 Mich. 36, 118 N.W.2d 961 (1963).
Here, it is undisputed that C & R recorded an amended construction lien with respect to 7 Waltonshire on August 20, 2002. It is also undisputed that on February 28, 2003, Clinton Valley Title Company recorded an affidavit of lost document, indicating that a mortgage loan had previously been closed by Gemcraft in favor of Sterling Bank and Trust on 7 Waltonshire. It is further undisputed that C & R filed its cross-complaint seeking foreclosure of its construction lien on 7 Waltonshire on June 6, 2003, and did not name Sterling Bank as a party in its complaint. The above being true, the court action to foreclose on the lien was not effective with respect to the real interests of unnamed parties that should have been named (Sterling Bank). This results in extinguishing C & R's claim of lien because any future foreclosure action would be beyond the one-year limitations period under the Construction Lien Act. MCL 570.1117. The trial court's ruling with respect to C & R's lien on 7 Waltonshire is thus affirmed.
With respect to C & R's argument that it should have been granted leave to amend its complaint, we note that this Court will reverse a trial court's decision on a motion to amend a complaint only where the trial court abused its discretion. Dampier v. Wayne Co., 233 Mich. App. 714, 721, 592 N.W.2d 809 (1999). Leave to amend a complaint should be freely given when justice so requires. MCR 2.118(A)(2). Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. Phinney v. Perlmutter, 222 Mich.App. 513, 523, 564 N.W.2d 532 (1997).
The Homeowner Construction Lien Recovery Fund (MCL 570.1201) was created to address the situation where potential lien claimants have done everything required of them under the Construction Lien Act, MCL 570.1101 et seq., but are precluded from recovering because of, for example, a homeowner's prior payment to a contractor. Erb Lumber, Inc. v. Gidley, 234 Mich.App. 387, 394, 594 N.W.2d 81 (1999). In such situations, they may recover the amount of their lien from the Homeowner Construction Lien Recovery Fund. Id. To that end, MCL 570.1203(4) provides:

*42 A subcontractor, supplier, or laborer who seeks enforcement of a construction lien on a residential structure through foreclosure shall join the fund as a defendant in the foreclosure action within the period provided in section 117(1). The subcontractor, supplier, or laborer shall serve a summons and complaint on the office of the fund administrator within the department by certified or registered mail or by leaving a copy at the office. The failure to serve a summons and complaint under this subsection bars recovery from the fund. After a defendant is served with a summons and complaint in an action to foreclose a construction lien, the department may intervene in the action as a party defendant with respect to other construction liens.
Section 117(1) provides that "[p]roceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded." MCL 570.1117(1).
While C & R filed its cross-complaint seeking foreclosure of its construction lien on 7 Waltonshire within one year of when it recorded the lien, C & R does not dispute that it failed to name the Homeowner Construction Lien Recovery Fund as a party in its initial cross-complaint. Because MCL 570.1117 serves as a statute of limitations and unequivocally requires that the fund be named as a party within that limitations period, and the limitations period for bringing a claim against the fund had passed, it would be futile for the trial court to have granted C & R's motion to add the fund as a party.
Affirmed.